UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HASTINGS FIBER GLASS PRODUCTS,
INC.,

        Plaintiff,

Case No. 1:16-cv-177

Hon. Paul L. Maloney

v.

ENLACE MERCANTIL INTERNACIONAL,
INC.,

        Defendant.
_____/

## REPORT AND RECOMMENDATION

This matter is now before the Court on defendant's corrected combined motion to dismiss or transfer venue (docket no. 12).

**I.   Background**

This matter involves a commercial dispute between plaintiff Hastings Fiber Glass Products, Inc. ("Hastings") and defendant Enlace Mercantil Internacional, Inc. ("Enlace"). Hastings seeks a declaratory judgment arising from the following allegations. Hastings manufactures "hot line tools" and equipment for use in the construction and maintenance of power grid systems in the United States and other places, including Puerto Rico. Compl. (docket no. 1, PageID.2). Enlace is a telecommunications equipment and systems company primarily involved in business-to-business sales. *Id*. at PageID.3.

On October 18, 1996, Hastings and Enlace entered into a written Foreign Distributor Agreement (the "1996 Agreement") in which Hastings granted Enlace the exclusive right to distribute Hastings' products in Puerto Rico. *Id*. On March, 19, 2012, Hastings tendered to

Enlace a signed and updated Foreign Distributor Agreement (the "2012 Agreement") in which Hastings again granted Enlace the exclusive right to distribute Hastings' products in Puerto Rico. *Id*. Although Enlace never signed the 2012 Agreement, Enlace was on notice of this new agreement. *Id*. In this regard, Hastings further alleged:

> 14. Despite the fact that Enlace failed to deliver a properly executed copy of the 2012 Agreement to Hastings, Hastings conducted business under the 2012 Agreement under the belief that it was fully enforceable between the parties. However, if Enlace never executed the 2012 Agreement, Hastings and Enlace continued to conduct business consistent with the terms of the 1996 Agreement until January 12, 2015, when Hastings notified Enlace that it intended to maintain the discount and payment structure in place at that time, but would permit other distributors to bid on product quotes requested by the Puerto Rico Electric Power Authority ("PREPA").

*Id*. Both the 1996 Agreement and the 2012 Agreement provided that the provisions are to be construed in accordance with Michigan law. *Id*.

The heart of the dispute is Hastings' decision to terminate Enlace's distributorship agreement(s) as set forth in ¶¶ 16-22 of the complaint which alleged:

> 16. Article II, Section 3 of the 1996 Agreement and 2012 Agreement provided that Hastings could terminate the Agreement immediately based on a number of triggering events including, but not limited to, a material breach by Enlace of any covenant of the agreement.
>
> 17. Article IV, Section 1 of the 1996 Agreement and 2012 Agreement provided, in pertinent part, that Enlace was obligated "to use its best efforts to develop demand for, and actively promote the sale of [Hastings'] products within the designated territory. [Enlace] agrees to identify itself clearly as the distributor of [Hastings'] products in business listings, directories, and advertisements."
>
> 18. On January 9, 2015, Hastings conducted a 2014 year-end review of Enlace's performance in the Puerto Rican territory and concluded that Enlace was not actively promoting Hastings' products. In addition, although Hastings repeatedly requested Enlace to specify the Hastings brand to potential customers, it failed to do so. Hastings was also frustrated by Enlace's repeated failures to pay for product

purchases on a timely basis as required by the contract between the parties. Each of these failures by Enlace, whether standing alone or in concert, constituted a material breach of the contract between the parties.

19. As a result, Hastings notified Enlace on January 12, 2015 that it was terminating the parties' exclusive contract as more fully set forth in paragraph 14 above.

20. Enlace never responded to Hastings' decision to terminate the exclusive arrangement, despite Hastings' invitation to discuss it in the termination notice.

21. Thereafter, and without any objection by Enlace, Hastings allowed other distributors, in addition to Enlace, to bid on requests for product purchases by PREPA.

22. On January 18, 2016, over one year after Hastings notified Enlace that it would permit other distributors to purchase products for sales to PREPA, Enlace accused Hastings of actively violating the parties' exclusive relationship and threatened to bring suit against Hastings if it did not immediately cease and desist from conducting business with other distributors seeking to sell Hastings' products in Puerto Rico.

*Id*. at PageID.4-5.

Hastings seeks the following relief from this Court:

A. Declare that Hastings is not in an exclusive distributorship relationship with Enlace because it rightfully terminated the 1996 Agreement and/or 2012 Agreement pursuant to Article II, Section 3 of either the 1996 Agreement and/or the 2012 Agreement;

B. Declare that Hastings shall not be held responsible for any claimed losses or damages incurred by Enlace as a result of any past or future sales of product to competing distributors of Enlace in Puerto Rico.

C. Declare that Hastings may conduct business and sell to other distributors of Hastings products to customers in Puerto Rico.

*Id*. at PageID.6.

Hastings filed this action on February 18, 2016. However, it was unable to serve Enlace with the summons and complaint by normal means. Although Enlace had an agreement with Hastings for close to 20 years, a process service could not locate Enlace's agents or officers, and certified mailings sent to its registered principal office were signed by an individual not listed as an agent of Enlace. In an order entered on April 6, 2016 (docket no. 8), this Court allowed Hastings to serve the summons and complaint on Enlace through alternate service, with Enlace being served on April 15, 2016. *See* Summons (docket no. 9).

The record reflects that Enlace was aware of the Michigan lawsuit for weeks prior to service, filing its own lawsuit in the United States District Court for the District of Puerto Rico on or about March 16, 2016. It would appear that Enlace was aware of that service of process in the present case was forthcoming, having alleged in its lawsuit "that Hasting [sic] filed a suit in the United States District Court for the Western District of Michigan." *See* Enlace Compl. (docket no. 14-2). In its lawsuit, Enlace alleged that there was no just cause for the termination and that the termination violated Puerto Rico's Act 75 (10 L.P.R.A. § 278 *et seq*.), which provides among other things that "the distributorship's contracts will be interpreted in accordance with the laws of the Commonwealth of Puerto Rico and any provision to the contrary incorporated in a contract is null and void." *Id*. at PageID.104. On July 28, 2016, the District Court of Puerto Rico entered judgment in Hastings' favor "under the first to file rule." Judgment (docket no. 15-1). As this Court previously observed, the judgment offered no opinion on the proper venue for this litigation. *See* Order (docket no. 17).[1]

---

[1] While this Court denied Hastings' motion for leave to supplement its brief with this judgment, the undersigned takes judicial notice of the judgment, which is a public record providing historical information on the parties' ongoing dispute.

**II.     Enlace's Motion**

In its combined motion, Enlace moves to dismiss this action pursuant to Fed. Rules Civ. Proc. 12(b)(3) or in the alternative, to transfer venue pursuant to 28 U.S.C. § 1404(a).

**A.     Motion to dismiss**

Under Fed. Rules Civ. Proc. 12(b)(3), a party may move to dismiss for improper venue. The general venue provisions are set forth in 28 U.S.C. § 1391(b), which provides at follows:

> A civil action may be brought in --
>
> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

Enlace raises three claims. First, Enlace does not reside in the Western District of Michigan. Second, Enlace's actions are alleged to have occurred in the District of Puerto Rico. Third, Puerto Rico's Dealer's Act nullifies any Michigan choice of law or forum selections clauses in the agreements. For its part, Hastings contends that venue is proper under 28 U.S.C. § 1391(b)(2). Accordingly, the Court will review Enlace's Rule 12(b)(3) motion to dismiss to determine whether Hastings has met the venue requirements of § 1391(b)(2).

> On a motion to dismiss for improper venue under Rule 12(b)(3), the plaintiff bears the burden of establishing that venue is proper. *Prakash v. Clinton*, No. 08 Civ. 09482(BSJ), 2010 WL 668816, at *3 (S.D.N.Y. Feb.25, 2010) (quoting *French*

> *Transit v. Modern Coupon Sys.*, 858 F.Supp. 22, 25 (S.D.N.Y.1994)). *See also J4 Promotions, Inc. v. Splash Dogs*, LLC, No. 08 CV 977, 2009 WL 385611, at *25 (N.D.Ohio Feb.13, 2009) ("When a defendant seeks to dismiss a claim for improper venue pursuant to Fed.R.Civ.P. 12(b)(3), plaintiff bears the burden of proving that venue is proper."). "[T]he court may examine facts outside of the complaint but 'must draw all reasonable inferences and resolve factual conflicts in favor of the plaintiff.'" *Receiver of the Assets of Mid-Am. Energy, Inc. v. Coffman*, -- F.Supp.2d – , 2010 WL 2085513, at *6 (M.D.Tenn.2010) (quoting *Gone to the Beach, LLC v. Choicepoint Serv.*, 434 F.Supp.2d 534, 536-37 (W.D. Tenn. 2006)). The plaintiff must show that venue is "proper for each claim and as to each defendant in order for the court to retain the action." *Verbis v. Iowa Dep't of Human Servs.*, 18 F.Supp.2d 770, (W.D.Mich.1998). . .
>
> Proper venue requires that "a substantial part of the events or omissions giving rise" to [the plaintiff's] claims must have occurred in this district. Section 1391(a)(2) does not require a plaintiff to file its complaint in the district where the most substantial events giving rise to the claim occurred; rather, venue is proper in "any forum with a substantial connection to the plaintiff's claim." *First of Mich. Corp. v. Bramlet*, 141 F.3d 260, 263 (6th Cir.1998). Venue may thus be proper in two or more districts, even when most of the events occurred in one of the districts. *Setco Enters. v. Robbins*, 19 F.3d 1278, 1281 (8th Cir.1994) (noting that a court is not to "ask which district among two or more potential forums is the 'best' venue" in determining whether a particular venue is proper). "Substantiality is intended to preserve the element of fairness so that a defendant is not haled into a remote district having no real relationship to the dispute." *Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir.1994). Therefore, "courts often focus on the relevant activities of the defendant, rather than the plaintiff, in determining where a substantial part of the underlying events occurred." *Abramoff v. Shake Consulting, L.L.C.*, 288 F.Supp.2d 1, 4 (D.D.C.2003) (citing *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1371-72 (11th Cir.2003)).

*Pioneer Surgical Technology, Inc. v. Vikingcraft Spine, Inc.*, No. 2:09-CV-271, 2010 WL 2925970 at *2-3 (W.D. Mich. July 21, 2010).

In support of its claim, Hastings states that a substantial part of the acts and omissions relevant to its claims occurred in Michigan: its headquarters and manufacturing facilities are in Michigan; Enlace transmits its product orders to Hastings in Michigan; Hastings' products that Enlace distributes in Puerto Rico are manufactured in Michigan; title to these products and the risk

of loss for the products pass to Enlace in Michigan; Enlace directs payments to Hastings in Michigan; Hastings maintains Enlace's line of credit in Michigan; Enlace pays for product shipment from Michigan to Puerto Rico; and Hastings conducts performance reviews of its territory specific dealers in Michigan. *See* Hastings' Brief at PageID.91. These facts are set forth in the affidavit of Bill Wolfe, the Export Sales Manager of Hastings, who is responsible for overseeing Hastings' Puerto Rico sales territory. Wolfe Aff. (docket no. 14-1).

Enlace provides no factual basis to support its motion. Rather, it merely states:

> As for 1391(b)(2), it does not apply either. The Western District of Michigan is not the judicial district where a substantial part of the events or omissions giving rise to the claim occurred. In considering the issue of "substantiality," "courts often focus on the relevant activities of the defendant, rather than the plaintiff, in determining where a substantial part of the underlying events occurred."
>
> Here, the relevant activities of Enlace, the defendant, occurred in the District of Puerto Rico. It is in Puerto Rico – not the Eastern District of Michigan [sic] – where Hasting [sic] has alleged that Enlace breached the distribution agreements by not actively promoting Hastings products, not specifying Hastings brand to potential customers, and not timely paying for products.

Enlace Memorandum (docket no. 12, PageID.76-77) (footnote omitted).

Based on this record, the Court concludes that venue is proper in the Western District of Michigan under § 1391(b)(2). In its complaint, Hastings alleged that the agreement(s) were terminated due to Enlace's actions which would have occurred in Puerto Rico, i.e., Enlace's alleged failure to promote Hastings' products and to specify the Hastings brand to its potential customers. However, at the same time, a substantial part of the parties' agreement(s) took place in Michigan. The products which Enlace distributed were ordered from Michigan, produced in Michigan, financed in Michigan, paid for in Michigan, and shipped from Michigan. One of the claims against Enlace is that it repeatedly failed to pay for product purchases on a timely basis, an act which occurred in

Michigan. Finally, Enlace's performance as a distributor was managed and reviewed by Hastings' personnel in Michigan. Furthermore, given the nature of the parties' agreement(s), Enlace cannot claim that it is being "haled into a remote district having no real relationship to the dispute." In short, Hastings could have filed this case in either the Western District of Michigan or the District of Puerto Rico. Hastings chose the Western District of Michigan. Accordingly, plaintiff's motion to dismiss for lack of venue should be denied.

### B. Transfer of venue

Next, Enlace seeks a transfer of venue under 28 U.S.C. § 1404(a), which provides that "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." The purpose of § 1404(a) is to prevent the waste of time, energy and money, and to protect litigants, witnesses and the public against unnecessary inconvenience and expense. *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). "To this end it empowers a district court to transfer 'any civil action' to another district court if the transfer is warranted by the convenience of parties and witnesses and promotes the interest of justice." *Id*. (footnote omitted).

"The moving party has the burden of establishing the need for a transfer of venue." *Kay v. National City Mortgage Co.*, 494 F. Supp. 2d 845, 849-50 (S.D. Ohio 2007). *See also*, *Cincinnati Ins. Co. v. O'Leary Paint Co., Inc.*, 676 F. Supp. 2d 623, 630 (W.D. Mich. 2009). In resolving such motions, courts consider six factors: the convenience of the parties and witnesses; the accessibility of evidence; the availability of process to make reluctant witnesses testify; the costs of obtaining willing witnesses; the practical problems of trying the case most expeditiously and

inexpensively; and the interests of justice. *Reese v. CNH America LLC*, 574 F.3d 315, 320 (6th Cir. 2009). In considering these factors, "[a] court should not transfer venue merely to shift the inconvenience of litigating from one party to another, and the party seeking a transfer of venue must make a strong showing that the forum is inconvenient." *Sleepy Lagoon, Ltd. v. Tower Grp., Inc.*, 809 F. Supp. 2d 1300, 1306 (N.D. Okla. 2011). "[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Means v. United States Conference of Catholic Bishops*, 836 F.3d 643, 651 (6th Cir. 2016) (internal quotation marks omitted).

### 1. Convenience of parties and witnesses

Enlace does not address why Puerto Rico is more convenient than Michigan for the parties and witnesses. Enlace Brief at PageID.78-79. Rather, Enlace contends that the Court should give less deference to Hastings' choice of forum because it involves a declaratory judgment action. *See O'Leary Paint Co., Inc.*, 676 F. Supp. 2d at 631 (collecting cases). "In general, a plaintiff's choice of forum is entitled to substantial consideration in balancing the § 1404(a) factors." *Steelcase, Inc. v. Smart Technologies, Inc.*, 336 F. Supp. 2d 714, 720 (W.D. Mich. 2004). While "a plaintiff's choice of forum should be given weight when deciding whether to grant a motion to change venue, this factor is not dispositive." *Lewis v. ACB Business Services, Inc.*, 135 F.3d 389, 413 (6th Cir. 1998). While Hastings' choice of forum may be entitled to less deference because this action is one for declaratory judgment, its choice is still entitled to some deference. This factor weighs against transfer.

### 2. Accessibility of evidence

Enlace states that the activities relevant to Hastings' claim occurred in Puerto Rico, where Enlace allegedly breached the distribution agreements by not actively promoting Hastings' products and failing to specify the Hastings brand to potential customers. While this is true, Hastings also alleged that Enlace violated the distribution agreements by failing to pay for product purchases on a timely basis, activity which occurred in Michigan. Enlace has failed to provide any information as to why the accessibility of evidence would be more convenient if the venue was moved to the District Court of Puerto Rico. Based on the allegations, it appears that the relevant business records are located in both Michigan and Puerto Rico. "Without some indication of why it would be overly burdensome for Defendants to produce their documents in this district, transfer based upon location of physical evidence would simply result in shifting inconvenience from one party to another." *Steelcase, Inc. v. Mar-Mol Co.*, 210 F. Supp. 2d 920, 940-41 (W.D. Mich. 2002). This factor weighs against transfer.

### 3. Availability of process to make reluctant witnesses testify.
### 4. Costs of obtaining willing witnesses.

"To substantiate a claim of inconvenience to witnesses, a party should provide each witness's name and a summary of the anticipated testimony to enable the court to assess the significance of the testimony." *Steelcase, Inc.*, 210 F. Supp. at 940. Here, while Enlace states that "key witnesses will hail from Puerto Rico" which is more than 100 miles from Michigan[2], it identifies no such witnesses. Similarly, while Enlace states that "it will be significantly harder to obtain witnesses willing to travel from Puerto Rico to testify in Michigan than to travel from within

---

[2] In its brief, Enlace incorrectly refers to the Eastern District of Michigan. *See* Enlace Mem. at PageID.79.

Puerto Rico to testify," it identifies no such witnesses. Enlace Brief at PageID.79. Given that this dispute involved activities that occurred in both Puerto Rico and Michigan, some witnesses will have travel from Puerto Rico to Michigan, or Michigan to Puerto Rico. This court "should not transfer venue merely to shift the inconvenience of litigating from one party to another." *Sleepy Lagoon, Ltd.*, 809 F. Supp. 2d at 1306. This factor weighs against transfer.

### 5. Practical problems.

Enlace contends that the Western District of Michigan presents "administrative difficulties of court congestion" which favor litigation in Puerto Rico.

> The public interest in prompt resolution of cases is a consideration in the transfer analysis, although a court "should not . . . look to docket conditions in order simply to serve the court's own convenience." *Fannin v. Jones*, 229 F.2d 368, 369 (6th Cir.1956) (per curiam).

*Steelcase, Inc.*, 210 F. Supp. 2d at 941. Enlace's sole support for transferring based upon "court congestion" are court statistics from September 2015 which reflect that the number of civil filings per judgeship in the Western District of Michigan (386) is larger than the number of civil filings per judgeship in the District of Puerto Rico (226). Enlace Brief at PageID.79, citing Federal Court Management Statistics, United States Courts (Sept. 30, 2015). For its part, Hastings refers to the Federal Court Case Management Statistics from December 31, 2015, which as of that date state the total number of pending cases per judgeship was 429 in the Western District of Michigan and 586 in the District of Puerto Rico, the total number of cases pending in each district, and the number of three-year-old cases in each district. *See* Federal Court Case Management Statistics (Dec. 31, 2015) (docket no. 14-3, PageID.113-114). While the parties cite statistical tidbits, neither party has defined the term "court congestion" or performed a statistical analysis of the available data to demonstrate

11

whether "congestion" exists or which court will provide a more prompt resolution. The Court could join in this statistical food fight by throwing out other numbers, but in the undersigned's opinion, this would not add any clarity to this discussion. In short, Enlace has not demonstrated that the Western District of Michigan is so congested that it will impair its ability to obtain a fair or prompt adjudication of this dispute. This factor weighs against transfer.

### 6. Interests of justice.

Enlace's cryptic argument for this factor is as follows:

> Puerto Rico has an interest in adjudicating a dispute involving a Puerto Rico resident. And the claims will be governed by the Puerto Rico's Dealers' Act. Thus, this factor weighs in favor of transfer.

Enlace Brief at PageID.80. "It is axiomatic that the construction of state law is best given to a court most familiar with it." *Detroit Coke Corp. v. NKK Chemical USA, Inc.*, 794 F. Supp. 214, 219 (E.D. Mich. 1992). However, choice of law is not that clear cut in this case. As discussed, both of the parties' agreements apply Michigan law (i.e., "This Agreement shall be construed in accordance with the laws of the State of Michigan and of the United States of America"). *See* 1996 Agreement (docket no. 1-1, PageID.12); 2012 Agreement (docket no. 1-2, PageID.19). The court adjudicating this controversy will need to determine which law applies to the agreement(s), whether that court is in Michigan or Puerto Rico. This factor is neutral with respect to transfer.

### 7. Summary

Enlace has not made a strong showing for transferring venue to the District Court of Puerto Rico. For the reasons discussed, all of the factors either weigh against transferring venue or are neutral. Accordingly, Enlace's motion to transfer venue should be denied.

### III. Recommendation

For the reasons set forth above, I respectfully recommend that Enlace's combined motion to dismiss or transfer venue (docket no. 12) be **DENIED**.


Dated: March 7, 2017	/s/ Ray Kent
	RAY KENT
	United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).